We will start with Jauch, I'm not sure how to pronounce it, versus Choctaw County, 16-60690. And we have Mr. Flites. I don't know, you can pronounce it for me. Good morning, Your Honor, and may it please the Court. My name is Victor Flate, that's from Tupelo, Mississippi, here on behalf of Jessica Jauch. Jessica was arrested in April and did not see a judge until the last day of July. She spent 96 days in custody before ever appearing before a judge, despite repeated protests of innocence and repeated requests that she be taken before a judge, and inquiries made by other witnesses that she be permitted to see a judge so that her bail could be set. The defendant, Choctaw County, and the defendant, Sheriff, made a conscious decision to disregard her right to appear before the Court so that she could have bail set, so that she could have counsel appointed, so that she could have an opportunity to have the false charges against her addressed, and so that she could have her freedom, the ability to avoid having had her daughter's custody taken from her, and suffering a 96-day detention for an offense which she did not commit. All right, well, you'll agree, though, that there is not a constitutional right to bail in all cases. Where the state provides that right, Your Honor, and Mississippi does, that right does exist. It was an absolutely bailable offense, not a capital offense under Mississippi law. Okay, let's talk about whether there's a constitutional right to bail. Separate from whether you should be brought before a judge and have a chance to argue for bail, that's a different question. But is there a constitutional right to bail? Is that your argument? Yes, there is where the state provides that right to bail. That is where the state says you have a right to bail on a specific for these charges. You're relying on the Mississippi Constitution's bail provision. Yes, and I believe federal authority that says that when that right exists under state law, as cited in my brief, then that right exists. So that's where the Eighth Amendment claims. But there's also just a general liberty interest that you need processed before you're deprived of liberty, even without recourse to state law, right? So if – you might not have a right to bail. Certainly people can be held if they're a flight risk or they're a serious danger. But if there's an interest in that liberty, don't you have at least a right to a hearing under the Due Process Clause before that liberty can be taken away from you? That's precisely the issue. Where you have a warrant issued as here, what is the right of the individual to appear before a judge so that these other fundamental constitutional rights can be met? And I believe that these constitutional rights are fundamental. Is this common? I mean it seems to me – and this helps you to the extent you have to prove this is the policy of the county. It seems to me this was nothing specific about your client where she upset the sheriff or someone in the jail and they said, oh, we're going to hold you for 90 plus days. It seems this is just the policy that if you get arrested after the court term ends, then you have to wait until this next court term, which can be a matter of months. So this would have happened to anyone arrested around this time? It is a sickeningly common problem in some of the smaller counties throughout our state. What would have happened if someone – she was arrested on a warrant based on a grand jury determination of probable cause. That is correct. Let's say someone had been arrested that same night just because they got in a fight at a bar and the police go out to the bar and arrest them for fighting, assault. Those folks would need a probable cause hearing. Would they have had to wait until August? How would the county have dealt with it? No, they would not. Let's assume that it was either a misdemeanor or perhaps a case that would have implicated a felony. In Mississippi, those individuals would have been taken before a non-lawyer justice court judge within 48 hours and had an initial appearance and could have had bail set. That non-lawyer judge is available, but the judge who, I guess, travels sort of in circuit and only visits the county every so often, that's not available and that's what your client needed? Is that the difference? Actually, he was available because Judge Joey Loper's office is right there in Choctaw County. Okay, but he's not sitting at the time. No, but the practice in Mississippi is the sheriff calls, lets the court know who they've got in the jail because they're the only people who know, lets them know how long they've been there, and basically says, I've got a couple of prisoners over here I need arraigned, and then the arraignments are made so that that constitutional right… You're saying in other counties, but not in Choctaw. In Choctaw, they wait around. I know the concept of term of court. I didn't know it still mattered anymore because I technically had a term of court when I was a state district judge and I came in every business day and there was never any difference. It wasn't like, oh, the term's up, now I get three months off. I mean, that just never happened, so I'm a little puzzled by the notion. I understand riding circuit, but, I mean, in Texas, we have judges that serve in 150-mile radius, and I've never heard of them saying, well, I won't go see a prisoner for three months because I'm not resident in that county for today. They get in their car and drive. Your Honor, the judges uniformly will go wherever they're told. They need to be to ensure that a defendant's constitutional rights are protected, but if the sheriff doesn't tell them, and in this case, he didn't tell them, and not only didn't tell them, he says, I don't have to tell anybody. You're going to wait until August. So you're saying there's no evidence that there would have been no way for the sheriff to find a judge. The judge is like, look, I'm fishing for three months. See you later. But rather to the contrary, judges could be arranged, whether it's that judge or somebody coming in from another county or whatever, could be arranged at least periodically to come in and hear whatever number of prisoners have kind of stacked up in the interim. That's how it's done throughout the state. That's how it's been done to 20 years, and I've had a substantial criminal practice, which is why I found the facts of this particular case so egregious. But the district judge did not find it egregious. The district judge also serves in Mississippi, and she has a lot of experience in Mississippi. She does, Your Honor. Does that show us that it's not clearly established, these rights, if a very smart and very well-versed in Mississippi law and so forth judge doesn't feel the shock that you feel? Your Honor, I cannot explain what the district court's thoughts were. I have appeared before her when she sat as a circuit judge and have the deepest respect for her. Whatever disagreements we may have about the outcome of this particular case, it is utterly, to me, inexplicable. Okay. How someone can sit for 96 days in jail and the case be resolved on an outcome determinative probable cause basis that doesn't address the fundamental issue of what right, liberty interest, does a person who is arrested on a warrant, whether a capious warrant or warrant issued by a judge after some affidavit is filed, what right that person has to appear before a court in a prompt basis to have bonds set, to have an attorney appointed, to have those fundamental liberties? Okay. You mentioned probable cause, and we asked you to take a look at Manuel v. City of Joliet, which addresses which amendment cases come under. And you all didn't bring a Fourth Amendment, and you haven't challenged the determination that there was probable cause to arrest and detain your client. So is that the end of it if you don't have a Fourth Amendment, or is there still a Fourteenth Amendment lurking around pretrial despite what the Supreme Court said in Manuel? I think if we look at the Court's decision, and I struggled with the case in terms of trying to reconcile it with what we're looking at here. And I believe that you can look at Joliet, the Manuel case, as falling under the Gersten v. Pugh line of cases. This case falls under the Baker v. McCollum line of cases, talking about the liberty, interest, and freedom from pretrial detention. The issue here really isn't a Joliet issue. That case resolved the conflict between the Seventh Circuit and the other circuits regarding whether or not a freestanding right to malicious prosecution exists, which this Court resolved in Castellano v. Fregoso, and ultimately to decide whether or not it was a Fourth or a Fourteenth Amendment concern. The Supreme Court came down and decided that that is a Fourth Amendment concern when you're making these allegations. Had I made those allegations as case law existed in Mississippi at the time and in the Fifth Circuit at the time, I'd have been bounced out of court. Because I had an informant who gave a statement to law enforcement officers specifically stating, this girl sold me pills. Under no circumstance would the officers who then went forward with charging that person could have been said to have lacked probable cause. But it's a little weird to me, and maybe, I mean, I haven't seen the film, but it sounds like as soon as the DA saw this film, it was like, uh, you know. And so that made me kind of wonder, was there probable cause? Because you have an informant, but if an informant says, you know, I gave money to X and there's a film that shows clearly that didn't happen, then wouldn't that negate probable cause? I believe that under City of Joliet, Judge Aycock's decision has to be reversed because there was an absence of probable cause. However, there's no way that the officers would have been required to have viewed the video prior to presenting it to the grand jury. So then they'd get the qualified immunity better. They would have been negligent. You're not interested in that line of fact. I assessed all of that. I didn't want to get into neutral intermediary. I didn't want to deal with that garbage because what I felt was I have an absolutely clear-cut violation of fundamental constitutional rights. If this isn't remedied, how many more people are going to languish in jail? I think that's true, but we always have two issues in qualified immunity. One, and we don't have to address them both, but one was a constitutional right violated, which is the discussion we've been having, and then whether it's clearly established. And one thing we can do, we don't always do it, but we can establish it in this case, but then say it wasn't clearly established before. We did that in Morgan v. Swanson, which wasn't a police officer. It was a school. But we said, we, the Fifth Circuit, I personally didn't join in the whole thing, but we, the Fifth Circuit, said that you did wrong, but it wasn't clearly established. But now we're clearly establishing it, so don't do this again. So why wouldn't we do that here, go, look, okay, this is wrong, but it was confusing, so now go forth and do better? I would disagree that it's confusing. I would say that in the year 2016, at the time that this happened, 2014, 2012, 2010, the year 2000, that every sheriff, every officer knows that if they arrest somebody and they're being held in jail, that person must be taken before a court. And you may not unilaterally decide to hold them in your lockup for an indefinite period of time. Okay, so let's talk about the period of time, because since there was a grand jury indictment, she didn't have the same rights as the hypothetical guy at the bar that Judge Costa mentioned to be brought in front of this non-lawyer justice or whoever. So what is this clear timeline? The only time I see is this 30-day arraignment, which Judge Aycock focused on the fact that the arraignment was waived, although that was after the fact. I know that. But is that the time period, 30 days? Is it less? Is it more? Is it a reasonable man or woman standard, or what is it? It's less. It's less. But as a matter of what the sheriff would have known based on clearly established statutory and other rules, harking back to the Eighth Amendment Hayes case, is he would have known, had to know, because it's written in stone, shall be arraigned within 30 days after the indictment. Then you've got the Mississippi statutory provision that says take before a judge without unnecessary delay. Wait a minute. That wasn't the law when this happened. Distinguish between the law when this case happened. I'm sorry, Your Honor. There was a statutory provision requiring an officer to carry a person without unnecessarily delay. Now that rule is incorporated into the Mississippi rules, but it existed statutorily before, Your Honor. Going back to the— We're talking about the Constitution, and the seizure was clearly constitutional. No problem about the seizure. Yes. Although the capeus was a year old, I'm surprised that—that's not a problem. But let's say that the sheriff took a stale capeus, which should have been renewed under Mississippi law. But this case has been submitted on the assumption that this indictment settled a constitutional problem of seizure. Yes, Your Honor. Now when does the Constitution require, irrespective of Mississippi law, require the detention extension to interfere with the liberty constitutional right? I think that's the case you have to win. Right, Your Honor. I don't know whether it's a day.  I don't know whether it may be 30 days, but I know it's not 96. And that's the best guidance that I could give— It's no more than 30 days because of the arraignment statute. Cannot be more— Is that a fair way to characterize what you're saying? Because of the court rule, it could not be under any circumstance, and given the statutory requirement that she be allowed to appear. Your Honor, just to clarify factually— That's good enough for your case. I'd stand on that 30 days, too, because that was in the statute then. It was in the court rule. I'm interested in your survey of our precedent, and I'm interested in Juliet or Manuel, that case, because there's a lot of language in that case that talks about detention, although it was clear that you had no constitutional seizure there. And that case is not a holding for you, but the language in there about the detention itself, it seems to me, suggesting that is a constitutional question. Your Honor, my time is up. May I answer the court's question? I would appreciate it. Yes, Your Honor. The detention in Manuel was 48 days. I know this because it was half as long as Ms. Josh spent in the Choctaw County Jail. Having said that, I think the answer to the question, Your Honor, regarding the constitutional differences between the City of Juliet is, Manuel was taken the same day of his arrest before a neutral magistrate who found probable cause to hold him, understanding it was based on false statements. He was subsequently before the court again and arraigned after his indictment, and then he continued to be held. In this case, there was an indictment, and then the rest of the judicial process was completely truncated by the sole decision of Sheriff Halford to hold her. My time is up, Your Honors. Thank you. Okay. You've reserved time for rebuttal. Yes, Your Honor. All right. Please support Danny Griffith for the defendants. Specifically, the constitutional question here must be addressed under the Fourth Amendment under Joliet. Yes, Your Honor. It's funny that we had to tell y'all about that case since y'all didn't ever file a 28-J and tell us. Actually, we briefed. It merely reinforces what Judge Aycock found under Gersten, and Gersten basically holds that the full plenipotentiary of rights under the Fourth Amendment are afforded when there's a neutral probable cause determination. The indictment was four months old, Your Honor. If I could give y'all a little bit of Mississippi context, out of school in the late 80s, to get my last semester of credit, I worked for a circuit court judge, and there were others in my class that worked for district attorneys. At that point, judges didn't have court administrators. District attorneys maybe had one person on staff. There were no staff attorneys. They had to get law students to do it. Fast forward to now. Circuit court judges have court administrators. There are regularly set public defenders. There are staff counsel in every circuit court judge's office in Mississippi. Mississippi's made a great deal of progress. One of the issues here that I believe is pivotal when you were asking about clearly established law is that in Ramsey v. State, addressing what would essentially have to be a procedural due process issue, it addressed a 73-day delay of somebody held pursuant to an indictment, a capious, and they said that was okay. Now, I would submit to the court that the Fourth Amendment question, of course, was not pled, but the Fourth Amendment question is much clearer now, Your Honor, because of Manuel. There was a great debate. In like 2003 when this Castellano decision came out, I really had to scratch my head. I had to scratch my head again looking at it in preparation for argument. But the justice here in the Supreme Court decision, especially if you'll dig into footnote 8, she makes it clear. The Fourth Amendment does not drop out, and I love the language, does not drop out until when the trial is over. We look at detentions pretrial now under the Fourth Amendment. And under Gersten, if we're looking at a detention under the Fourth Amendment pretrial, we would look at the probable cause requirement, which is satisfied by the indictment. But the problem is the argument here and what the claim being made by the plaintiff here is not the claim being made in Manuel that there was a lack of probable cause to hold the plaintiff because there was a grand jury indictment, which is probable cause. And there's this entirely separate line of cases, our case in Jones v. City of Jackson, for example, that's found a procedural due process right to have a court hearing, to get these issues that are decided preliminarily in every criminal case like bail, like an arraignment being advised of the charges, being advised of your right to an attorney. So, I mean, we generally say that we don't view a Supreme Court opinion as overruling our precedent unless it's clearly doing so. Manuel, we've been treating a Manuel-like claim as a Fourth Amendment violation. It was only the Seventh Circuit that wasn't. So what in Manuel, I mean, I agree it's hard to tell exactly how far it goes, but what in Manuel clearly says this separate line of cases, like our Jones case, which is about the process you get under the due process clause, not about actually being detained without cause, what indicates that that precedent has essentially been overruled? I think what they're doing clearly is they're reinforcing, and Judge Aikot got it right, there's no substantive due process claim here. We've got to look at this, if anything, as procedural due process. Which is what Jones, I read Jones as a procedural due process. Yes, Your Honor, and when I give you a case like Ramsey v. State where, well, first off, what happens with procedural due process if there's an adequate remedy at state law? It's gone. What's the adequate remedy? She was in the jail for 90-plus days. She didn't get an adequate remedy. We wouldn't be here if state law was followed and she'd gone before the judge. For the same reason that a federal court could not have granted her habeas mandamus and habeas through Mississippi would be available. That is an adequate remedy at law. Because she's sitting there with no lawyer, no one will talk to her, no one will let her basically access the world, and so she's expected to know this thing that you just mentioned, that she should bring a mandamus against the sheriff while she's sitting there in prison? Your Honor, I understand that, but all she has to do is write a letter. Okay, let me come at it this way, counsel. Why shouldn't the sheriff know the law and follow it? Why shouldn't that be the rule rather than expecting some random citizen to know all this detailed stuff about mandamus that a roomful of lawyers and law clerks and interns in here might not have known? Well, absolutely, and the sheriff followed every aspect of the law applicable to a Mississippi sheriff. A Mississippi sheriff, once there has, see the difference is, you talked about the justice court, it's next door, it's in the same building. When somebody comes into that jail, they walk them next door to justice court. When there is a capias, that means under our Mississippi Constitution, it is exclusive to a circuit court judge. And I'm not standing here to blame it on the circuit court judge, but the buck stops with a state officer. When you question policy, policy is not policy. But, Sheriff, under Mississippi law, there should have been an arraignment within 30 days. Do you concede that? No, Your Honor. That has been read as the Ramsey case. There was no arraignment within 73 days. No, but I'm talking, forget the Constitution. Under Mississippi law, shouldn't there have been an arraignment? Your Honor, I do not agree. And the reason I do not agree is because that's deemed waived under our case law. Because the main purpose of an arraignment under our case law. Your position that you can keep someone, this was 90 plus, let's say you keep someone for a year without a bail hearing, without being advised of the charges against them at the arraignment, that's your position that until there's some, I mean the person can be held forever basically. What limit is there? No, Your Honor, I do not agree. So what's the limit? The reason I don't agree is there are court terms twice a year in Choctaw. No, but let's say the Sheriff doesn't bring the defendant to court when there's a court term. At that point, oh, if the Sheriff refused to bring him to the court, it would still be a circuit court issue. Okay, but the problem is how does this judge, so let's say the judge was sitting there, you know, working on signing orders or whatever you do when you don't have court. How's that judge supposed to know Ms. Josh is sitting there in jail? I mean the judge isn't out there visiting the jail going, hey, this lady, I haven't seen her before, bring her in. The judge has to be notified by someone that, hey, here's our list of arraignments. Could you, Judge X, could you please set a hearing? And then if the judge says, sorry, I'm fishing for the next three months, then it's off the Sheriff and it's on the judge. I get that. But I see no evidence here or indication or even argument that the Sheriff went to the judge and the judge refused to hold a hearing. Your Honor, the Sheriff had a clear duty to serve that KPS and to return that KPS promptly. The prompt return of the KPS is the notice, and in the stipulated facts that happened almost immediately. And this is not a situation of the Sheriff being inattentive. A number of things in the stipulated facts clearly run contrary to that. First, she was able to clear local charges. Second, she was able to deal with a family attorney to set up a guardianship. Third, she was carried to neighboring Octavia Hall County, where they gave her arraignment days before this and set her bail and appointed her counsel. Yes, but the Sheriff kept saying, na-na-na-na-na, when she said, I want to go in front of a Choctaw County judge so that I can get a bail set on this case that she was entitled to bail on and got bail on when she finally got to see a judge. Right? And the Sheriff just said, na-na-na-na-na, from what I can tell. Actually, no, Your Honor, he followed every order that he was required to do. Okay, well, you know what? Then this does sound like a case where if we find it's not clearly established, we need to clearly establish it, because as far as I'm concerned, your answers show me why Choctaw County is such a mess, at least as far as I can tell from the record here, because if you're the one giving them advice, you're advising them this is okay. It's not okay. To me, the only question is clearly established, because it is not okay. I don't care where the judge is, and if they're fishing and all that, they need to get another judge or send them to this same JP, because she should be brought in front of some sort of neutral decision maker to get a right to bail sooner than 96 days. And to me, that's not much of a question, and the fact that you're able to stand here and argue with a straight face really concerns me personally. I feel what you're saying, Your Honor. Let me explain this. In our training with Sheriff's Departments, and I probably deal with about 50 of them, this set of facts I have run by and run by and run by. Sheriffs, what is your solution? Now, uniformly across Mississippi, the solution has to be we have to find a mechanism to get the circuit judges with exclusive jurisdiction to do something. And our term statutes may be arcane, but they are what they are. If you're going to hear something in vacation in Mississippi, it is at the sole discretion of the circuit court judge, a state officer. What evidence is there that this sheriff brought to the circuit judge's attention the presence of Ms. Joush or anybody else, and the circuit judge said, I'm fishing for three months, leave me alone, or whatever, I'm in vacation, or whatever the term is? The return, which is confirmed in the record when the court gave notice to the public defender of the upcoming term. Now, the best suggestion I've had out of any sheriff in Mississippi that I've talked to with this problem is they say, now wait a minute, if it's a misdemeanor and we can't get anybody, there's a statute in Mississippi that lets legislatively, that the legislature has allowed a sheriff to ROR somebody or set an emergency bond, which I think is great. In a felony, their hands are tied. Now, there is also a situation to where if someone simply writes a letter and the Mississippi Supreme Court comes back and tells the judge to have a hearing, that certainly can happen as well. But those issues are not issues that a Mississippi sheriff can solve. Those are issues that one, the legislature either has to modify the statute. Okay, let me ask you this because there may be an endemic problem, and it's kind of interesting because just yesterday I was on a panel that denied an injunction in a Harris County bond situation, slightly different situation, but has some overlap here. So what you're telling me is that Mississippi has a very odd procedure that results in a lot of people being denied their constitutional rights, which I think is interesting. But we're dealing with stipulated facts. I did not see anything in the stipulated facts that showed that the sheriff, and he certainly didn't tell Ms. Joush this, that the sheriff brought this to the attention of the judge, that we have people that need arraignment so that the judge could say, no, I refuse to grant any arraignment hearings, or yes, I will. So tell me exactly on what day there is evidence that the sheriff brought to the judge's attention that there was Ms. Joush or anybody else. She was arrested in Starkville on April 25th. She was served on April 26th. On April 26th, notice was given back to the court via service of the return. That was the sole statutory duty of the sheriff. Beyond that, he had no jurisdiction to give her a bond. My Mississippi sheriffs would love the authority to grant bonds to a felony or grant some kind of diversion, but that's a legislative fix. Let me go back to a question I asked earlier. You said there was not under Mississippi law, forget the Constitution for a second, a right to arraignment within 30 days. Why do you say that given the statute that says an arraignment should be held within 30 days? I just don't understand why you're saying that doesn't apply. I know there's exceptions if they're being held in a separate county and people get arrested in separate states and all that, but someone arrested in the county where the case is being heard. Judge Aycock, as she properly held, our rules of criminal procedure supersede statutory law because that's a function of the judiciary. Ultimately, we're talking here about judicial determinations. Do I give someone counsel? Do I give them bail? So you agree the rule does provide that. You're just saying the rule gets trumped. The rule trumps the statute, and the Mississippi Supreme Court, for instance, in Ramsey, has held that 73 days was not unreasonable. The Fifth Circuit, there's an unreported decision, Harris v. Payne, which is very telling. You had a gentleman by the same name of the person indicted, so a mistaken identity baker type case, where they come in and they spend four months down in an institution before their arraignment day, and the Fifth Circuit dismissed and found that it failed to state a claim for a Fourth Amendment violation of due process. So this is difficult. There's been some discussion of clearly established. You defend the county. You defend the sheriff and the county, right? Yes, I do. And so the county doesn't have an immunity defense. There's no clearly established issue with the county, right? The issue with the county in a lot of the briefings— There has to be Monell liability. That has to be attached to a policy or custom, but there's no qualified immunity for the county, right? Certainly not under Monell. Qualified immunity is a different animal. But here's the deal. Under Pembau, the policymaker decision is what controls, and this is a judicial act. Acts of setting bail, acts of determining probable cause, acts of appointing counsel— No, but not transporting the person to the judge is the sheriff's act. But he transports the person to the judge. That's what's being challenged, not any decision the judge makes. The judge didn't have an opportunity to make a decision. Are we to put people into the back of a car and ride them around from courthouse to courthouse until we can get a circuit court judge to listen? Sure, if the woman's been sitting there for 93 days. I think it would be wonderful, but it's not constantly required. The marshals drive people all over the country or even the world. I understand, and I began working as a public defender, Your Honor. I understand access to justice. I was even on the state board in Mississippi. This concerns me, but this is not a county issue, and it is not a individual issue. Okay, you're saying that Mississippi has a structure of state law that is itself unconstitutional, so that's not your client's fault, the county or the sheriff. That's really what you're arguing. Well, the Mississippi structure is constitutional. Well, the structure is that these judges can sit around for three months and say, na-na-na to everybody. That's the structure you just announced, which makes little sense to me. I mean, I understand small counties with few judges and people riding the circuit and all that. They do that here in Texas. But I've never heard that that justifies this kind of delay. It may justify some period of delay, but it's certainly – Texas is bigger than Mississippi. And so if they can drive around Texas, they can drive around Mississippi. I've got you. And I tell you what, even this circuit court – I mean, this district judge, when she was a circuit court judge – let me tell you a story, and it uses some of my time. It's 7 p.m. on a January rainy evening in Pontotoc, Mississippi, and we have been grinding for three days on a bench trial over a pursuit. We get a break to get the next witness ready. I'm in the back of the courtroom panting because of the pace we're going. And I look up at the front, and the judge has never left the bench. She's sitting there in her robes taking a guilty plea. This same judge is our district judge now. She understands how this works, but ultimately we get back to the clear fact that the detention is governed by the Fourth Amendment. Substantive due process does not apply. Procedural due process is satisfied by the existence of a state law remedy, which there is. And then ultimately, if there were a constitutional violation, Your Honor, by Mississippi only having two court terms a year for a given county, if there were a constitutional violation for that, it would not come home to the county because of separation of powers. That is judicial. That is the state in nature. The state makes that policy. There is no authority to do anything but follow it. I guess you're saying if there is anything unconstitutional here, it's on Mississippi and not the county or the sheriff. Certainly qualified immunity for the sheriff because he wouldn't have been clearly established. And on the county, they're not the one making the policy. It's the state. That's your argument. In a nutshell, Your Honor, Pembauer tells us that. It tells us that a state officer is not a local policymaker. Policymaking for law enforcement in Mississippi counties is the sheriff. This is not a law enforcement decision. This is a judicial decision. And I've got a yellow light. Is there anything with two minutes left that I can answer? This is worrisome. I'll just say that. I have fretted over it, and, Your Honor, I have brought it up with groups and groups and groups of sheriffs. My fix, my best fix, came from a South Mississippi sheriff in a seminar a couple months back, and he said, why don't they just amend the statute and let us, if we have to, set bail for a felony? That's the best answer I've ever heard. Now, the problem is, I don't know that it wouldn't violate separation of powers if the legislature did that, because once you're indicted in Mississippi, you're exclusive to a circuit court judge. He has two court terms that he has to meet, and then he or she has complete discretion as to hear something in vacation. So I don't know if that's a fix. It's the best fix, I can tell you this, the fact of litigation like this, and my friend here on the other side, the fact of litigation like this makes it better. We're all trying really, really hard to make it better in Mississippi and wherever. We've got your position representing the county and the sheriff in Mississippi even today. The sheriff has absolutely no responsibility to use his key and unlock or to get somebody else to say whether or not it can be unlocked. But just what happened is consistent with the Constitution and the viewpoint of the policymaker, county, and sheriff today. Your Honor, it is today, but the criminal justice system thankfully is evolving. If you gave me a choice, I'd have a statewide public defender situation in Mississippi, and we'd fix a lot of things. But if courts start picking where to push with the limited financial pie. Okay. I know you're out of time, but I have a quick question. Don't drop the trapdoor. Okay. Fair enough. I control the trapdoor, so that's the good news. All right. So you keep mentioning the return of KPS, and so what you're relying on is Record 120 where there's a file stamp that says, Filed April 27, 2012, Peggy Miller, Circuit Clerk. That's what you're relying on. Yes, Your Honor, that happened. My only question is, I mean, I was a state district judge, civil cases, and a ton of stuff was filed in my court, and I'm going to have to confess I didn't read it all as it got filed, or ever unless it became something I needed to read because we had a hearing or a trial or something was needed from me in terms of a ruling. Because sometimes people file cases and settle cases, and the first time I saw them was the agreed order of dismissal. So I wasn't sitting there reading the thousands of pleadings coming in my court every year, unnecessarily. So how does that tell us a judge saw this just because there's a file stamp on it? It is not 100% guaranteed. It is clear that the sheriff followed the law, though. Now, what would have to happen? All right. That's it. So that's what you're relying on. I just wanted to be clear that you're relying on this file stamp for what you told me about the judge had it or whatever. Undisputed that it was filed, yes. Okay. Thank you. All right. Let's hear your rebuttal. What do you say to the argument that if the policy is messed up, it ain't on the county, it's on the state, so don't hold the county accountable? Mississippi law clearly holds that prosecutions are county functions. Mississippi statutory law says that it is the sheriff who bears the responsibility for the jail, for everybody who's in the jail, for their upkeep, for their safety, for their transportation, for everything pertaining to them. All he needed to do was pick up the phone and talk to Joey Loper, who I served with on a bar complaint tribunal. He could have called Clarence E. Morgan, Kim Morgan, who I've tried cases in front of, and dollars to donuts. They would have stopped what they were doing to ensure that the fundamental constitutional rights of Jessica Johnson were kept. Okay, but what about these are the same judges that apparently have a clerk of court that stamps this stuff and puts it in a file, and that's it, and they don't seem to have a policy that says make sure I know about people that have had a returned capious and are sitting there rotting in prison. So is that on the judge or is that on the county or is that on the sheriff? His argument essentially is you can't tell a judge what to do, and I'm familiar with that concept. And so how do you answer that, that we have a judge whose clerk of court filed this document? And, again, I don't think that means the judge read it. I get that. But the judge is still responsible for what's going on in their court. So how do we separate that out between the responsibility of the judge, responsibility of the sheriff? The responsibility to the judge, at least insofar as ethical duties and rules of judicial procedure, would have been to conduct an arraignment once he had notice. I say he or she. In this case there were two male circuit judges. Once he had noticed from the sheriff that there was someone in his jail who needed an arraignment. Are these judges riding a big circuit or where are you? You said physically they're there. Geographically, no courthouse is more than 30 minutes from each other. So it's not like we were up in northwest Texas. My circuit's one of the largest in the state, encompassing seven counties, and the furthest drive anybody has to make if they're centered in Tupelo, which is my hometown and where most of the judges are at, is an hour and ten minutes. Judge Aycock is a conscientious jurist. I cannot understand this decision. Well, maybe she's going with what he's saying, that she knows the way things work in this scene. It's kind of how it is. Judge Aycock conducted arraignments in the Lee County Detention Center once she was notified that there were people there. Our circuit judges do that. The sheriff of our county, who I have had innumerable cases with over the years and with whom I've disagreed, lets the court know who's in his jail, who needs to be brought before them. Normally, in 90% of cases, there's this justice court procedure. Affidavit filed, you get that bond, and then you await an arraignment. This case is that 10% of cases where they go directly to indictment. In this case, it was a year after the alleged events that the indictment was handled. I'm wondering, let me throw this out there. It seems like we're talking about a lot of facts, how things are done, so on and so on. That seems very fact-based. This is a very preliminary determination at the outset of the case, and that's separate from the qualified immunity, but at least as far as whose policy it is, county versus state, and how things are done, and whether there's any power for anybody to do something different, that sounds really fact-bound and something that I'm not sure I should just be guessing at based on what you are. I'm not doubting what you all are telling me, but it sounds kind of like the wrong place for me to be developing the facts here, as fun as this is, but it seems like the wrong situs for a development of the facts. This is properly before this court, and the facts that have been provided to the court are all that the courts need to determine what the constitutional issues are, being the 14th Amendment right to liberty requires that a county sheriff and a county see to it that the people in their custody have timely court appearances after arrest by warrant. That's the constitutional rule. That was a rule with which opposing counsel agreed, and I understand that. Right, but that rule, who violated it and how it was violated, seems fact-bound. I mean, I think that somewhat helps you because that would mean it would go back for more factual development, but then you get into that issue of qualified immunity and clearly established on the sheriff, who sounds more sympathetic here than he does in the papers. In the papers he sounds pretty callous. His presentation is, well, the sheriff's just doing his best. He's got a judge who won't answer the phone or whatever. In this case, unlike the Hayes v. Faulkner, we don't have a sheriff who failed to implement a policy to see that the people in his custody received timely hearings for the protection of their fundamental rights. We had a sheriff who faced with that question, deliberately said, I don't have to do nothing. You're going to have to wait these 90 days. If that doesn't constitute deliberate indifference, if that doesn't constitute a complete disregard for the norms of American jurisprudence, for American law, for the duties of law enforcement, I don't know what does. My time is up. Yep, your time is up. Very interesting. Thank you both. That was actually very helpful, and I appreciate it.